## John Alexander, Appt., *v.* John Moody et al.

In a suit for specific performance of a contract to convey land, where the averment that the purchase money had been fully paid is denied, and a receipt is exhibited acknowledging that $2,000 had been received from a third party on the contract, and that in consideration of this advance by such third party the defendant is to convey the land to the plaintiff's decedent, "and he to execute a judgment bond to her (such third party) for. the amount, secured by mortgage on same property," such third party is a necessary party to the bill, that she may have an opportunity of proving that the decedent was a party to and acquiesced in the arrangement, and thereupon the court should decree that before the conveyance is made to plaintiffs, or simultaneously therewith, the sum advanced to her should be secured on the premises.

A written expression of opinion by the defendant as to the construction of an agreement in writing ought not to control the meaning of the language employed therein. Where an agreement for the sale of land, properly construed, excepts the coal, the erroneous opinion or supposition of either of the parties cannot alter it. An exception and reservation of certain timber on the land described, also all oil or gas in or under the same "with free mining privileges of all kinds, right of way for roads of all kinds, also free ingress and egress over, into, upon, and under said lands in all parts thereof at all times," embraces coal and other mineral substances in the reservation.

(Argued October 8, 1887. Decided October 24, 1887.)

October Term, 1887, No. 165, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Appeal from a decree of the Jefferson County Common Pleas in favor of plaintiffs in a suit for the specific performance of a contract for the conveyance of land. Reversed.

The bill sets forth: (1) That on September 28, 1875, defendant sold to John Moody part of a tract of land in Snyder township, Jefferson county (setting out the agreement); (2) that on July 1, 1879, defendant sold to John Moody other land in the same township (setting out the agreement); (3) that

---

Cited in Moody v. Alexander, 145 Pa. 571, 579, 23 Atl. 161, in which the contract in question was again adjudicated.

John Moody in his lifetime had paid defendant the full consideration, and had performed all covenants on his part; (4) that John Moody was dead, and that the plaintiffs were his heirs and legal representatives; (5) that they had made application to defendant for performance on his part, and demanding conveyance of the land; and praying a decree for specific performance.

John Alexander, the defendant, in his answers to plaintiffs' bill, submitted to the court that Rebecca Brown, a widow, resident in Philadelphia, is a necessary party to the bill; that the said Rebecca Brown is a sister of John Moody, deceased, and at his request advanced the sum of $2,000 with which that much of the purchase money mentioned in the agreement set forth in the bill was paid, under an agreement that this should be secured by a judgment bond and mortgage on the property, giving her $140 per annum for life, payable semi-annually, and so that at her death the principal may, if she so directs by her will or otherwise, become extinguished for the benefit of her brother or his heirs; that the third paragraph of the bill is untrue, inasmuch as $2,000 of the purchase money had not been paid, and will not have been paid in satisfaction of so much of the purchase money agreed to be paid on that contract, until there shall have been delivered to Rebecca Brown a mortgage on the property and a judgment bond of the owners thereof, securing to her the payment of $140 annually during her lifetime. Defendant annexed a copy of the receipt given her for the sum of $2,000, which shows the terms on which it was paid, and averred that defendant had paid her for the annuity the following sums, which are due him from the representatives of John Moody: January 6, 1881, $280, to December 4, 1881; November 4, 1882, $140, to December 4, 1882; November 9, 1883, $140, in full to December 4, 1883; August 5, 1884, $140, in full to December 4, 1884.

(Copy Receipt.)

Philadelphia, Dec. 4, 1879.

Received of John Moody by the hands of Rebecca Brown $2,000, being on account of his contract with me dated July 1, 1879, by which I have sold to him 114 4/10 acres of land, being part of tract No. 130 in Snyder township, Jefferson county, Pennsylvania, in consideration of which payment I am to

make conveyance to him of said tract, and he to execute a judgment bond to her for the amount secured by mortgage on same property.    Interest to be paid semi-annually.

(Signed)                                        John Alexander.

The answer further averred that defendant had always been ready and willing to make such a conveyance as was required by the contracts, and that he did have such a conveyance prepared and executed, and tendered the same to the plaintiffs, on the 10th day of December, 1883, together with any balance due them on accounts between them, but they refused to accept the same.

The agreement of September 28, 1875, stated that Alexander "reserves all minerals and underground deposits of all kinds and descriptions, and all timber (except that herein specially granted for use on the premises), including free mining privileges," etc.

The agreement of July 1, 1879, stated that Alexander reserves "all such timber upon said land as he may wish to use or manufacture; also all oil and gas in or under the said land, with free mining privileges of all kinds, right of way for roads of all kinds; also free ingress and egress over, into, upon, and under said lands, any and all parts thereof at all times;  .  .  . and for all land temporarily taken for mining and for damages incurred by entering upon and using said land in mining operations, said Moody shall be entitled to receive reasonable compensation from the party inflicting or causing such damage."

Defendant executed a deed dated November 9, 1883, and claimed to have tendered it in compliance with the agreements.

This deed first described the land referred to in the agreement of July 1, 1879, and as to that contained the following:

"Excepting and reserving to the party of the first part, his heirs and assigns, out of and from the premises first above described, all timber growing upon the said premises that he, the said party of the first part, his heirs or assigns, may require for use or manufacture, with the right of ingress and egress at all times hereafter for cutting and carrying away the same.    And excepting and reserving all oil, gas, and mineral substances in, under, or upon the said premises, and the right of entering in and upon the lands for the purpose of mining or otherwise winning and obtaining the said oil, gas, and mineral substances by mining or other usual and customary processes," etc.

The said deed described, secondly, the land referred to in the agreement of September 28, 1875, and as to that contained the following:

"Excepting and reserving to the party of the first part, his heirs and assigns, all gas, oil, coal, ores, and other minerals or mineral deposits in, under, or upon the said premises; and also all timber growing upon the same, together with the right to construct convenient roads and ways over or under the same, and the right of ingress and egress for searching for and winning and removing the coal, timber, and other substances excepted and reserved," etc.

The master who heard the case reported that Rebecca Brown need not be made a party and that it was not requisite that a bond and mortgage for $2,000 be given her as part of the purchase money, as claimed by defendant. He also reported that the deed of November 9, 1883, complied fully with the agreement of September 28, 1875, but that the reservation in the deed of "all mineral substances" was not warranted by, and was not a compliance with, the agreement of July 1, 1879. He based this construction of the instruments mainly upon a letter of the defendant to one of the plaintiffs, set out in the opinion of the supreme court in reference to his omission to reserve coal in the agreement. The master accordingly recommended a decree entitling the plaintiffs to a specific performance of the agreement of July 1, 1879, and submitted form of deeds following the wording of the agreements, and imposed the costs upon the defendant.

Exceptions to the master's report were overruled and a decree was entered in conformity therewith, and plaintiff appealed.

*R. C. McMurtrie* and *Alexander C. White* for appellant.

*E. H. Clark* and *Charles Corbet* for appellees.

OPINION BY MR. JUSTICE STERRETT:

One of the questions suggested by the record is whether Mrs. Rebecca Brown should not have been made a party to the bill, so that her right to a mortgage simultaneously with the conveyance, securing $2,000 purchase money, advanced by her in December, 1879, might have been considered and decided.

In the third paragraph of the bill it is averred that the pur-

chase money has been fully paid; but this is denied in the answer, wherein appellant says Mrs. Brown, a sister of John Moody, deceased, at his request advanced $2,000, with which that much of the purchase money was paid, under an agreement that the same shall be secured by a judgment bond and mortgage on the property, etc., and refers to the receipt given when she paid the money.

That paper, after acknowledging the receipt of the $2,000 from Mrs. Brown on account of Moody's contract of July 1, 1879, for purchase of the land therein described, provides that, in consideration of the sum thus advanced by Mrs. Brown for Moody, appellant is to convey the land to him "and he to execute a judgment bond to her for the amount, secured by mortgage on same property."

As to the $2,000 above referred to, it is not even alleged by appellees that it was paid in any other way; and, if they claim the benefit of it as a payment on account of the purchase money, they cannot in equity and good conscience repudiate the terms on which it was advanced by Mrs. Brown. She is at least entitled to an opportunity of proving the allegations contained in appellant's answer, and that her brother was a party to or acquiesced in the arrangement. If she succeeds in doing so, the court should decree that before the conveyance is made to appellees, or simultaneously therewith, the sum advanced by her should be secured on the premises.

Another subject of contention is the true construction of the clause, in the agreement of July 1, 1879, excepting and reserving certain timber upon the land therein described, also all oil and gas in or under the same, "with free mining privileges of all kinds, right of way for roads of all kinds, also free ingress and egress over, into, upon, and under said lands, any and all parts thereof at all times," together with other rights and privileges therein specified.

It is claimed by appellant that the language of a conveyance, executing the contract, should be such as to carry out its true intent and meaning, in forms of expression usual in approved conveyancing, and not in the very words of the contract. He accordingly executed and tendered a deed, embodying the exceptions and reservations referred to, expressed in due form, and, as he contends, carrying out the true intent and meaning of the executory contract.

Construing the contract, without the aid of evidence *dehors* the instrument, we think his position to have been the view entertained by the learned master until he discovered what he regarded as the key to the proper construction of the agreement, *viz.*, the expression contained in appellant's letter of September 29, 1883, in which he says:

"I want you to tell me by return mail what your family has to say to my offer to give them $100 in lieu of my omission to reserve the coal in the bottom lands. As a matter of fact my omitting the reserve can be of no possible good to your family, but I prefer to have all my titles alike and it may at some time be an advantage to me; and so I propose to give them $100, and hope it will be satisfactory to all of them."

This letter was addressed to one of the appellees after the decease of his father; and the master regarded it as conclusive evidence that the phrase, "with free mining privileges of all kinds," and other expressions contained in the excepting and reserving clause of the agreement, was not intended to embrace coal and other mineral substances. In this he was mistaken. What was said by appellant in the letter referred to was merely an expression of opinion as to the construction of the agreement, and ought not to control the meaning of the language employed therein.

In their bill plaintiffs below pray specific execution of the contract as written. There is no allegation or even a suggestion in the pleading that the language of the contract does not convey the real intention of the parties. If the agreement properly construed excepts the coal, surely the erroneous opinion or supposition of either of the parties cannot alter it. We are, therefore, of opinion that the learned court also erred in decreeing specific performance of the contract "with the reservations and conditions provided for in said contract, as interpreted by the master's report."

In view of all the circumstances, the costs should not have been imposed wholly on appellant. As the case now presents itself on the evidence before us, an equal division of the costs would have been more just and equitable. But, inasmuch as the case goes back for further proceedings, it may assume a different phase when a final decree is reached; and hence it is unnecessary to express any opinion upon the subject that might be

regarded as interfering with the sound discretion of the court below in finally passing on the question of costs.

Decree reversed at the costs of the appellees, and record remitted, with instructions to proceed in accordance with the foregoing opinion.